**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 309-09548 |
| **OLD TIME POTTERY, INC.,** ) | Chapter 11 |
| ) | Judge Lundin |
| Debtor. ) | |

## EXPEDITED MOTION FOR ENTRY OF INTERIM ORDER (1) AUTHORIZING USE OF CASH COLLATERAL, (2) GRANTING REPLACEMENT LIENS AND PROVIDING ADEQUATE PROTECTION, AND (3) GIVING NOTICE OF FINAL HEARING

Comes now Old Time Pottery, Inc. ("OTP" or the "Debtor"), and respectfully submits this expedited motion requesting entry of an order (1) authorizing the Debtor to use cash which is claimed to be the collateral ( the "cash collateral") of SunTrust Bank ("SunTrust"), as described below (2) granting replacement liens in the collateral described below and other adequate protection for the use of such cash collateral and any diminution in value of SunTrust's prepetition collateral, and (3) scheduling a final hearing herein. In support of this motion, the Debtor respectfully represents as follows:

### STATEMENTS PURSUANT TO LOCAL RULE 9075.1

1. **Expedited Relief Requested:** Approval of postpetition use of cash which is claimed to be the collateral of SunTrust, as described below, and related relief.

2. **Reason for Urgency:** Debtor's assets include the ownership and operation of thirty-seven (37) retail stores, and the Debtor must use cash collateral in order to pay for the daily operating expenses at the stores. Thus, this motion must be considered on an expedited basis, until such time as the Court can conduct a final hearing on the Debtor's continued use of cash collateral.

3. **Notice Given:** This motion and the proposed order granting same have been served upon the United States Trustee, the Debtor's secured creditors, SunTrust, and the twenty (20) largest unsecured creditors of the Debtor by electronic mail where known, and by first class United States Mail, postage prepaid.

4. **Suggestion for Hearing:** The Debtor respectfully suggests that the hearing on this motion be set for Monday, August 24, 2009, at 10:00 a.m. Hearings on other "first-day motions" have been requested for that date and time. It is in the interest of judicial economy to hear this motion simultaneously with other first-day motions. Some of the same evidence will support all of the first-day motions. Creditors and other interested parties will be placed on notice of the August 24, 2009 hearing. No interested party will be prejudiced by the setting of the hearing on this motion on August 24, 2009. The United States Trustee is aware of this motion and has authorized the Debtor to state to the Court that the United States Trustee consents to the setting of the hearing on this motion at that date and time.

5. **Statements in Support of Motion**: Further statements in support of this motion are respectfully submitted below.

## BACKGROUND AND JURISDICTION

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), pursuant to which the Court may determine matters concerning the administration of the estate. Further, the Court possesses the requisite authority to grant the relief requested herein pursuant to 11 U.S.C. §§ 105, 361 and 363, and Bankruptcy Rule 4001(b).

7. On August 21, 2009 (the "Petition Date"), the referenced Debtor filed a voluntary petition in this Court under Title 11, Chapter 11, United States Code (the "Bankruptcy Code").

Pursuant to 11 U.S.C. §§ 1107 and 1108, the Debtor was continued, and remains, in possession of its property as a debtor-in-possession, and it continues to operate its business and manage its properties. No trustee has been appointed in this case. No official creditors committee has been formed.

8. The Debtor is generally in the business of operating home décor retail stores. OTP was founded in 1985 as a single store in Murfreesboro, Tennessee. Presently, OTP operates 37 stores in twelve states throughout the southeast and midwest United States. OTP employs approximately 1,600 employees.

9. At its 37 retail stores, the Debtor uses the cash generated from the operations of the stores for various purposes, in order to continue the ongoing operations at the facilities. Debtor owns an additional store that is temporarily closed due to a fire. The proceeds of sales are used to purchase inventory and supplies, pay employees and governmental entities, pay rent of both real estate and leased equipment, pay utilities, pay for upkeep and security, pay for management functions, and pay long-term and short-term debt obligations. The Debtor is dependent on the use of cash generated from the operations of the stores to keep the stores running smoothly.

10. The Debtor's primary debt obligation that purports to be secured is evidenced by a Restated Revolving Credit Loan Agreement, executed by OTP, as borrower, and SunTrust, as lender, under date of March 13, 2007, and various amendments, extensions and forbearance agreements executed by the parties since March of 2007 (the original agreement and all subsequent amendments, extensions, etc. shall be collectively referred to as the "Loan Agreement"). As of the Petition Date herein, the principal and accrued interest owed on the Loan Agreement was approximately $18 million.

11. SunTrust asserts liens on and security interests in assets of the Debtor. Specifically, by virtue of the Loan Agreement, SunTrust contends that it is secured by assets owned by the Debtor at the retail stores, including inventory, equipment, supplies, and the cash generated by operations at the stores. The cash generated from the operations of the stores may be "cash collateral" within the meaning of 11 U.S.C. § 363(a). Without waiving the Debtor's rights to contest the validity of such prepetition liens and security interests, to the extent SunTrust has valid, perfected, unavoidable and valuable prepetition liens on and security interests in assets of the Debtor, the Debtor respectfully suggests that SunTrust is entitled to adequate protection under 11 U.S.C. §§ 361 and 363.

## RELIEF REQUESTED

12. By this motion, the Debtor requests authority, pursuant to 11 U.S.C. § 363(c)(2), to use cash generated from the operations of the retail stores, which such cash may be the collateral of SunTrust. In addition, the Debtor requests that the Court grant, pursuant to 11 U.S.C. §§ 361 and 363, adequate protection to SunTrust to secure SunTrust for any diminution in the value of SunTrust's interests in its collateral, in the form of replacement liens on the Debtor's postpetition assets. Further, the Debtor requests that the Court set a final hearing on this motion.

13. The use of cash is critical to the everyday, ongoing operations at the Debtor's stores. As noted above, cash is needed to pay employees and related employment taxes, to pay utilities, to pay insurance, to pay vendors for supplies and inventory, to pay for upkeep at the stores, and generally to do all things necessary to keep operations at 37 retail stores running smoothly without interruption.

14. Without the relief requested herein, the Debtor's operations as a going concern would be compromised, and the Debtor's stores would be closed within hours of the filing of the petition herein. Therefore, emergency consideration of this motion is requested.

15. SunTrust asserts a first priority security interests in substantially all of the assets of the Debtor, including inventory, supplies, equipment and cash generated from the operations of the stores. The Debtor respectfully suggests that the granting of a postpetition replacement lien in said collateral, to the same extent SunTrust was secured prepetition, would adequately protect SunTrust's prepetition liens as appropriate under the circumstances. As further adequate protection, the Debtor respectfully submits herewith its proposed budget (the "Budget"), attached as **Exhibit A** hereto, outlining the Debtor's anticipated cash needs during the first eight (8) weeks of this case. The Budget reflects the anticipated revenues and expenses of the Debtor. [Budgets for individual stores are available upon request to counsel for the Debtor.] Further, it will be important to the long-term health of the Debtor to be able to use cash to increase the levels of inventory for the upcoming holiday season. The Debtor can supplement the Budget to show its cash needs for a longer period prior to the final hearing on this matter. The Debtor requests authority and approval to spend up to a maximum of 110% of the total amount set forth on the Budget, or such other amounts as may be agreed upon by the Debtor and SunTrust. Without the use of cash collateral as demonstrated in the Budget, the Debtor will suffer immediate and irreparable harm, and the Debtor's efforts at reorganizing herein will be unsuccessful.

16. The Affidavit of Mr. Robert L. Sharp, the chief financial officer of the Debtor, is respectfully submitted herewith in support of this motion.

17. A proposed Order granting this Motion is attached hereto as **Exhibit B**.

18. The Debtor respectfully requests that the Court enter an order approving its use of SunTrust's cash collateral until a final hearing can be conducted on this motion, pursuant to Rule 4001, Rules of Bankruptcy Procedure.

WHEREFORE, pursuant to Rule 4001(b)(2), Rules of Bankruptcy Procedure, the Debtor respectfully requests that the Court hold an interim hearing on an emergency basis to consider authorizing the Debtor's use of cash collateral to avoid immediate and irreparable harm to the estate, pending a final hearing. Until such final hearing, the Debtor respectfully requests that the Court authorize its continued use of SunTrust's cash collateral, pursuant to the Budget attached hereto. The Debtor further requests that the Court grant SunTrust replacement liens in the Debtor's collateral to the extent that such use of cash collateral results in a decrease in the value of SunTrust's interests in the Debtor's property as of the Petition Date. Finally, the Debtor respectfully requests that the Court schedule a final hearing herein.

Debtor further requests such other relief as is necessary and appropriate.

Respectfully submitted this 21st day of August, 2009.

/s/ Linda W. Knight
Linda W. Knight/Thomas H. Forrester
Gullett, Sanford, Robinson & Martin, PLLC
315 Deaderick Street, Suite 1100
P.O. Box 198888
Nashville, TN 37219-8888
(615) 244-4994
lknight@gsrm.com; tforrester@gsrm.com;
bke@gsrm.com

*Attorneys for Debtor*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2009, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ Linda W. Knight
Linda W. Knight

382034.1/2009490

7

# EXHIBIT A

## OPERATING BUDGET
## Week Ending August 28, 2009 through
## Week Ending October 16, 2009

Old Time Pottery, Inc.
Cash Flow Projection by Week

| | 08/28/09 | 09/04/09 | 09/11/09 | 09/18/09 | 09/25/09 | 10/02/09 | 10/09/09 | 10/16/09 |
|---|---|---|---|---|---|---|---|---|
| Incoming Cash from Sales | 2,629,799 | 3,374,374 | 5,015,150 | 2,652,750 | 2,790,950 | 2,859,150 | 3,108,250 | 4,238,050 |
| | | | | | | | | |
| Outgoing Cash | | | | | | | | |
| Wages | 529,000 | 598,000 | 529,000 | 598,000 | 529,000 | 598,000 | 529,000 | 598,000 |
| Payroll taxes | 45,282 | 51,189 | 45,282 | 51,189 | 45,282 | 51,189 | 45,282 | 51,189 |
| Medical Insurance premiums | 152,000 | 17,000 | 0 | 0 | 152,000 | 17,000 | 0 | 0 |
| P&C Insurance premiums | 0 | 0 | 33,075 | 0 | 0 | 0 | 33,075 | 0 |
| W/C & G/L claims | 50,000 | 0 | 0 | 0 | 50,000 | 0 | 0 | 0 |
| Rent | 0 | 1,380,000 | 0 | 0 | 0 | 1,380,000 | 0 | 0 |
| Utilities & Phone | 400,000 | 58,333 | 58,333 | 400,000 | 65,933 | 58,333 | 53,333 | 365,000 |
| Stores Operating Expenses | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 | 19,000 |
| Repairs & Maintenance | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 | 52,000 |
| Office Expense | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 | 33,000 |
| Travel Expenses | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| Advertising | 25,000 | 25,000 | 25,000 | 25,000 | 765,000 | 25,000 | 25,000 | 25,000 |
| Merchant Fees/Interchange | 45,000 | 45,000 | 45,000 | 45,000 | 45,000 | 56,000 | 56,000 | 56,000 |
| Bank/Payroll/Professional | 2,000 | 2,000 | 2,000 | 2,000 | 34,000 | 2,000 | 2,000 | 2,000 |
| Taxes & Licenses | 150,000 | 70,000 | 70,000 | 870,000 | 150,000 | 70,000 | 70,000 | 270,000 |
| Freight | 325,000 | 325,000 | 325,000 | 325,000 | 325,000 | 325,000 | 325,000 | 325,000 |
| | | | | | | | | |
| Fund Checks Outstanding | 250,000 | 250,000 | 250,000 | 250,000 | 125,000 | 125,000 | 125,000 | 125,000 |
| Purchase of Inventory | 300,000 | 400,000 | 600,000 | 800,000 | 1,000,000 | 1,200,000 | 1,400,000 | 1,600,000 |
| | | | | | | | | |
| Net Cash Flow | 246,516 | 42,852 | 2,922,460 | (823,439) | (605,265) | (1,158,372) | 334,560 | 710,861 |

EXHIBIT A